```
                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF OHIO
                         WESTERN DIVISION
```

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, et al., | : : : | |
| Plaintiffs, | : : | NO. 1:02-CV-00107 |
| v. | : : | |
| BOARD OF COUNTY COMMISSIONERS OF HAMILTON COUNTY, OHIO, et al., | : : : : | |
| Defendants. | : : | |
| ------------------------------ | : : | NO. 1:09-CV-00029 |
| BOARD OF COUNTY COMMISSIONERS OF HAMILTON COUNTY, OHIO, | : : : | |
| Plaintiff, | : : | **OPINION AND ORDER** |
| v. | : : : | |
| CITY OF LOVELAND, OHIO, et al., | : : : | |
| Defendants. | : | |

This matter is before the Court on the Board of Commissioners of Hamilton County Ohio (the "Board") and the City of Cincinnati's ("Cincinnati") Motion for Judgment on the Pleadings in Case No. 1:09-CV-0029 (doc. 373), Defendant City of Loveland's ("Loveland") Response in Opposition (doc. 390), and the Plaintiffs' Reply (doc. 392). Also before the Court is the Board's Motion for a Protective Order Staying Discovery Pending a Decision on the

Board's Motion for Judgment on the Pleadings and Motion to Amend Pretrial Schedule (doc. 386), Cincinnati's parallel motion (doc. 387), Loveland's Response in Opposition (doc. 391), and the Plaintiffs' Replies (docs. 393, 394). For the reasons indicated herein, the Court GRANTS Plaintiffs' Motion for Judgment on the Pleadings and ENJOINS Defendant City of Loveland from attempting to modify the Consent Decree in this matter by collateral attack, through termination of the 1985 Agreement or otherwise, while Consent Decree obligations are pending. The Court further DENIES as MOOT the Plaintiffs' Motions for Stay because its judgment on the pleadings terminates the Loveland matter, NO. 1:09-CV-00029, completely.

**I. Background**

On June 9, 2004, the Court entered Consent Decrees[1] in <u>United States v. Board</u>, Case No. 1:02-CV-00107, (the "sewer" case), which set in place a framework for insuring that Defendants in such case, the Board, Cincinnati, and the Metropolitan Sewer District of Greater Cincinnati ("MSD"), address capacity and pollution problems with their sewer system, through the implementation of infrastructure improvements through the year 2022 (docs. 129, 130,

---

[1] The Court entered two decrees: 1) the Consent Decree on Combined Sewer Overflows, Wastewater Treatment Plants and Implementation Capacity Assurance Plan for Sanitary Sewer Overflows, and 2) the Interim Partial Consent Decree on Sanitary Sewer Overflows. The Court uses the terms "Consent Decree" and "Consent Decrees" interchangeably within this Order.

131). The entry of the Consent Decrees came after a long process, that included notification about the Decrees by the United States through publication in the The Federal Register, which solicited public comment (doc. 129). After the Court reviewed all comments, it conducted a hearing on the Consent Decrees, finding them fair, adequate, and in compliance with the Clean Water Act (Id.).

Defendants' sewer system currently includes the Polk Run Waste Water Treatment Plant and Loveland Service Area, which by a 1985 agreement with the Board was consolidated into the MSD, modernized and enlarged, and which is now known as the "MSD Polk Run Segment" (doc. 343). There is no dispute that the MSD Polk Run Segment is subject to the Consent Decrees' mandated improvements and repairs (Id.). On October 29, 2008, the City of Loveland filed a Complaint in the Clermont County Court of Common Pleas, in which it alleged that compliance with the Decrees will result in increased rates for all users (Id.). Loveland sought declaratory judgment sanctioning termination of the 1985 agreement, as well as the grant of easements to the extent necessary such that it could operate the Polk Run Segment (Id.).

On January 14, 2009, the Board brought suit in this Court, Case No. 1:09-CV-00029, (the "Loveland" case), seeking declaratory judgment on the issue of whether Loveland could secede from the MSD and obtain the Board's interest in property subject to the Consent Decree. The Court consolidated the Loveland case and

3

the sewer case on June 3, 2009, finding that Loveland was "seeking to gain control over assets directly involved in the Consent Decrees" (doc. 354). On September 28, 2009, the Clermont County Court of Common Pleas dismissed Loveland's state court action, holding that Loveland had failed to state a claim for breach of the 1985 agreement, and that because Loveland's action directly affected the Consent Decrees, judicial economy and the risk of inconsistent results mandated that only one court rule on the matter (doc. 386).

On September 14, 2009, the Board and Cincinnati filed the instant motion for judgment on the pleadings in Case No. 1:09-CV-00029, arguing that because Loveland failed to object to the Consent Decrees during the 2004 public comment period, it should be enjoined from attempting to modify the Decrees by removing its ratepayers from overall Consent Decree obligations (doc. 373). Loveland has responded (doc. 390), and the Board and Cincinnati have replied (doc. 392), such that this matter is ripe for the Court's consideration.

**II. Applicable Legal Standard**

The Court may grant a party's motion for judgment on the pleadings under Federal Rule 12(c) if it determines that the moving party is entitled to judgment as a matter of law. In arriving at such determination, "all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the

motion may be granted only if the moving party is nevertheless clearly entitled to judgment." Tucker v. Middleburg-Legacy Place, 539 F.3d 545, 549 (6th Cir. 2008). In its evaluation, the Court may consider the "pleadings, which consist of the complaint, the answer, and any written instruments attached as exhibits." Felix v. Dow Chemical Co., No. 2:07-CV-971, 2008 WL 207857, *1 (S.D. Ohio Jan. 23, 2008). The Court may also "consider materials in addition to the pleadings without converting the motion to one for summary judgment if the materials are public records or are otherwise appropriate for the taking of judicial notice." Id. at *1.

**III. Analysis**

Movants contend that Loveland's present attempt to terminate the 1985 agreement between it and the Board is nothing but a collateral attack on the Consent Decrees so as to avoid the obligations of such Decrees (doc. 373). Citing Loveland's state court Complaint, Movants contend Loveland's stated goal is to avoid rate increases made necessary by the Board's obligations under the Consent Decrees, by terminating the 1985 agreement (Id.). Movants further contend Loveland failed to submit public comments in 2004 regarding the Consent Decrees, nor did it participate, file any submissions, or appear at the Court's May 2004 hearing regarding entry of the Consent Decree (Id.). In Movants' view, there is no question based on Loveland's state court complaint, and further, based on its public statements, of its intention to extract a

5

portion of MSD from the Board's unified efforts to comply with the Consent Decrees (Id.). If Loveland would be allowed to terminate the 1985 agreement, argue Movants, then there would be less money available for MSD operations and Consent Decree projects, which would likely result in undesired extensions to completion of such projects (Id.). Therefore, argue movants, the Court should issue an Order, based on the Consent Decrees, the pleadings in this matter, and the doctrines of laches and estoppel, declaring that Loveland cannot modify the Consent Decrees by terminating the 1985 agreement, or otherwise, while the Consent Decrees are pending (Id.).

Movants argue that by its express terms, the Consent Decrees do not allow modification by a non-party, and there is no dispute that Loveland is not a party to such Decrees (Id.). They also contend that because any termination of the 1985 agreement would cause a change in "interest in or operating role with response to" the MSD Polk Run Segment, the Consent Decrees would necessarily require modification so as to make Loveland a party subject to Consent Decree requirements (Id.). Because none of the current parties to the Consent Decrees are seeking to modify the Consent Decrees in the manner that Loveland seeks, and because Loveland is not a party to such Decrees, Movants argue Loveland should not be able to force any modification during the pendency of the Decrees (Id.).

6

Movants argue their position is supported by the doctrine of laches, as Loveland "sat silently for nearly five years," while the Board and Cincinnati made substantial commitments to develop and implement measures to ensure compliance with the Decrees (Id.). In movants' view, "a party may not, by silence, create an impression of acquiescence that leads others to make substantial commitments" (Id. quoting Hadix v. Johnson, 66 F.3d 325 (6th Cir. 1995). Similarly, movants argue that Loveland's silence during the notice and public comment period should give rise to equitable estoppel barring Loveland from terminating the 1985 agreement (Id. citing Great North Savings Co. v. Ingarra, 66 Ohio St. 2d 503 (1981), First Federal Sav. & Loan Ass'n of Toledo v. Perry's Landing, Inc., 463 N.E. 2d 636, 647 (Ohio Ct. App. 1983)).

Loveland responds that though it does not dispute that it did not make any formal objection to the Consent Decree, that fact alone should not preclude it from terminating the 1985 agreement and resuming control of the sewage plant, which it owns (doc. 390). Loveland argues there is no evidence in the record contradicting its assertion that it will do everything required by the Consent Decree, including becoming a party thereto (Id.).

Loveland argues movants make numerous statements of purported fact that are unsupported by the record, including that Loveland seeks to modify the Consent Decree, carve out MSD ratepayers, and that Loveland received notice of the Consent Decree

7

(Id.). Loveland contends the movants merely conjecture about what "may" or "might" happen in the future such that they are not entitled to judgment as a matter of law (Id.).

Loveland states it is not seeking to modify the Consent Decrees, but that it "will voluntarily become party to the Consent Decree. . .and [it] will satisfy any and all obligations related to the Polk Run Plant and the Polk Run System" (Id.). Loveland argues the terms of the Consent Decree allows for a successor-in-interest, a role that it could take in assuming Polk Run obligations (Id.).

Loveland argues movants improperly invoke the doctrine of laches, as there is no authority supporting movants' contention that Loveland may not terminate a private contractual agreement like the 1985 agreement due to a failure to comment on the Consent Decrees (Id.). Loveland argues there is no evidence it was aware of the Federal Register notice, and in any event, such notice provided only a general overview of the history leading up to the Decree and contract information for any comments (Id.).

Even if the doctrine of laches applies, Loveland contends, the Court would have to resolve factual issues regarding the requisite "proof of lack of diligence," on Loveland's part (Id.). Moreover, argues Loveland, it should be given the opportunity to explain why it did not participate in the public comment period in 2004 (Id.).

As for equitable estoppel, Loveland similarly argues that

8

several issues of fact preclude judgment on the pleadings (Id.). Loveland contends that the issue of movants' reliance on Loveland's lack of objection is an issue of fact (Id.). Loveland reiterates its position that there is no evidence it had notice of the Consent Decree (Id.). In any event, Loveland argues the comment period in 2004 should not be considered the time-frame for notice, as the parties to the Consent Decree did not file until June 8, 2009, the Wet Weather Improvement Plan, which details the projects to be performed, the schedule, and the costs (Id.).

Movants reply that Loveland does not dispute any material fact set forth in the Complaint (doc. 392). As Movants see it, there is no dispute that the Polk Run Plant and Segment are part of the Consent Decree, that Notice of the Consent Decree was provided in the Federal Register, that Loveland submitted no comments nor participated in the Court's hearing on the motion for entry of the Consent Decree, and that Loveland is now trying to terminate the 1985 agreement so as to remove its ratepayers and insulate them from planned rate increases resulting from the Consent Decrees (Id.). Movants further argue there is no dispute that Loveland is not party to the Consent Decree, that any change of interest or operating role with regard to the Polk Run Plant/Segment would be governed by the Consent Decree and would require modification thereof, and that no party to the Consent Decree has moved to modify the Consent Decree (Id.).

9

Movants argue that Loveland attempts to manufacture factual disputes that are all simply immaterial to the question of whether Loveland, which failed to object during the Consent Decree comment period, can terminate the 1985 agreement and require modification of the Consent Decree (Id.). Movants argue the doctrine of laches is indeed applicable to this case, as laches is "the neglect to assert a right or a claim," something which Loveland failed to timely accomplish in failing to assert its claimed right to terminate the 1985 agreement (Id. quoting Kansas v. Colorado, 514 U.S. 673, 687 (1985)). Movants further argue that Loveland's contention regarding a lack of evidence that it received notice of the Consent Decrees falls flat because publication of such notice in the Federal Register constitutes notice as a matter of law (Id. citing 44 U.S.C. § 1507, Wolfson v. United States, 204 Ct. Cl. 83, 492 F.2d 1386, 1392 (1974)(publication in the Federal Register provides legal notice of an action to all who may be affected thereby)). Movants argue they have performed substantial Consent Decree duties, over the course of five years, based on the assumption that the Polk Run Plant and Segment would be part of MSD, and that the resulting revenues would be available to help fund the Consent Decree-required capital improvements (Id.). Movants argue that allowing Loveland to raise its asserted contract rights at this point would be extraordinarily prejudicial (Id.).

Having reviewed this matter, the Court finds movants' position well-taken that Loveland's desire to cancel the 1985 agreement amounts to a collateral attack on the Consent Decrees, to which it never objected in 2004 when it had the opportunity to do so. The Court therefore finds the doctrines of laches and of equitable estoppel applicable to this case, for all of the reasons articulated by movants. Even the sewer case Plaintiff, the United States, when the Court was considering consolidation of the sewer case with the Loveland matter, stated "the regulators believe that the appropriate time for Loveland to have raised these issues was during the consent decree negotiation process, or at least during one of the two public notice and comment periods for the decrees. Yet Loveland did not" (doc. 346, fn. 1).

Although Loveland is correct that the Consent Decree envisioned the possibility of successors-in-interest to the Board, it is not correct that any non-party could acquire such an interest without the consent or action of a party to the Decree. Here, no party to the Consent Decree seeks the changes proposed by Loveland.

The Court finds without question that Loveland's desire to terminate the 1985 agreement is rooted in the desire to insulate its ratepayers from rate increases due to remediation costs that under the Consent Decrees will be borne across the MSD system. Loveland's state court complaint and its public statements, of which the Court takes judicial notice, establish as much. Even

11

Loveland's statement that it has no intent to modify the Consent Decree rings hollow because although it states it "will satisfy any and all obligations related to the Polk Run Plant and the Polk Run System," its current obligations under the Consent Decree, which were forseeable in 2004, are larger.  The Court finds no genuine dispute that Defendants in the sewer case have relied upon the assumption that Loveland ratepayers were part of MSD's global system.  It is further without question that as a matter of law, Loveland had notice of the Consent Decrees in 2004, but failed to comment or participate at such time.  Under these circumstances, the Court finds movants entitled to declaratory judgment as a matter of law, barring Loveland from seeking to terminate the 1985 agreement or in any other way modifying the Consent Decrees, during their pendency.

**IV. Conclusion**

The Court finds that even while taking Loveland's arguments as true, the movants in this matter are entitled to judgment on their pleadings.  Inequity would result if Loveland were permitted to enforce its now-stale claim to terminate the 1985 agreement as such termination would affect the implementation of the Consent Decrees.  Loveland has proffered no evidence demonstrating excusable delay in asserting its claim, beyond attempting to argue it lacked notice, while as a matter of law, publication in the Federal Register constituted notice.  44 U.S.C.

§ 1507, Wolfson v. United States, 204 Ct. Cl. 83, 492 F.2d 1386, 1392 (1974). Loveland had notice of the Consent Decrees in 2004 and did nothing. The parties to the Consent Decrees reasonably relied on Loveland's silence as they crafted the complex, multi-year infrastructure improvements that have begun the implementation of the remedies required by the Consent Decrees. As such, doctrine of laches applies to this matter. Gardner v. Panama R.R. Co., 342 U.S. 29, 30-31 (1951). For the same reasons, especially Loveland's silence that innocently misled Defendants into relying on Loveland's participation in the global remedies called for by the Consent Decrees, the Court finds Loveland should be equitably estopped from withdrawing from MSD until after full implementation of the Consent Decrees. First Federal Sav. & Loan Ass'n of Toledo v. Perry's Landing, Inc., 463 N.E. 2d 636, 647 (Ohio Ct. App. 1983).

Accordingly, the Court GRANTS the Board of Commissioners of Hamilton County Ohio and the City of Cincinnati's Motion for Judgment on the Pleadings in Case No. 1:09-CV-0029 (doc. 373), DECLARES that the Defendant City of Loveland shall not be permitted to unilaterally terminate its 1985 agreement with the Board, and ENJOINS the City of Loveland from attempting to modify the Consent Decree in this matter by collateral attack, through termination of the 1985 Agreement or otherwise, while Consent Decree obligations are pending. The Court further DENIES as MOOT the Plaintiffs'

Motions for Stay (docs. 386, 387) because its judgment on the pleadings terminates the Loveland matter, NO. 1:09-CV-00029, completely.  The Clerk is directed to dismiss Case No. 1:09-CV-0029 from the Court's docket.

    SO ORDERED.


Dated: January 13, 2010       <u>s/S. Arthur Spiegel          </u>
                                         S. Arthur Spiegel
                                         United States Senior District Judge